**UNITED STATES, Appellee,**

v.

**Alvaro J. VARGAS,
Defendant, Appellant.**

**No. 90–1084.**

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 1990.
Decided April 16, 1991.

Charles P. McGinty, Federal Defender Office, for defendant, appellant.

Duane J. Deskins, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief for appellee.

Before SELYA, Circuit Judge, BROWN * and BOWNES, Senior Circuit Judges.

* Of the Fifth Circuit, sitting by designation.

JOHN R. BROWN, Circuit Judge.

Alvaro Vargas seeks reversal of his conviction for being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). He brings this appeal under Fed.R.Crim.P. 11(a)(2) from a conditional plea of guilty on the ground that the warrant used to enter his premises contained misleading information and thus did not provide probable cause for the search which resulted in recovery of the firearms. Finding no error, we affirm.

### The Telephone Tip–Off

On Wednesday, January 13, 1988, the police of the town of Blackstone, Massachusetts, received an anonymous telephone call regarding the drug-related activities of an individual initially identified as "Vasquez." The informant advised the police that "Vasquez," who also used the alias "Carlos Vargas," was dealing in stolen guns and cocaine. The informant related that this individual received a cocaine delivery at his residence every Thursday or Friday at approximately 3:30 P.M. The informant predicted that other drug dealers would arrive at the second-floor apartment shortly after the shipment arrived. The informant also provided the police with the residence address where the alleged activities took place. In addition, the informant told the police that "Vasquez" had engaged in drug dealing activities while living nearby in Woonsocket, Rhode Island, and that the Woonsocket police had an outstanding warrant for his arrest. Following up on the tip, the Blackstone police obtained copies of Woonsocket police records concerning "Carlos Vargas," and received independent corroboration that "Vasquez" and "Carlos Vargas" both referred to defendant-appellant Alvaro Vargas.

### The Collect Call

Later the same evening, Blackstone police officers staked out Vargas' residence and observed thirteen persons, either alone or in pairs, make short visits to Vargas' residence between 6:00 p.m. and 10:00 p.m. Based on the information gained from the informant, the Woonsocket police documents, and the surveillance activities, the Blackstone police on January 14, 1988, obtained a state warrant to search Vargas' residence. They executed the warrant on January 15, and recovered cocaine as well as a number of firearms from Vargas' residence.

A state grand jury indicted Vargas for possession of cocaine, but the state court suppressed the evidence obtained from the search and dismissed the charge, finding that the affidavit supporting the warrant did not meet the state standard governing review of warrants.[1] Following the state court dismissal, a federal grand jury in the District of Massachusetts issued a one-count indictment against Vargas for being a convicted felon[2] in possession of firearms in violation of 18 U.S.C. § 922(g)(1). Vargas moved to suppress the evidence and to compel disclosure of the taped telephone conversation between the police and the informant. The district court denied both motions.[3] Vargas, reserving his right to appeal the denial of these motions, entered a plea of guilty on which he was convicted of being a felon in possession of firearms. His appeal asserts that 1) the affidavit underlying the warrant did not contain facts sufficient to provide probable cause for the search; 2) the police deliberately or recklessly misrepresented the extent of the informant's knowledge of Vargas' activi-

1. The state court found that the affidavit underlying the warrant did not meet state standards because it failed to show that the informant was reliable "by past contact, or corroboration or other indicia."

2. The underlying felony was a 1984 Rhode Island conviction for possession of cocaine in violation of R.I.Gen.Laws § 21–28–4.01(C)(1)(a).

3. Federal law governs review of the sufficiency of the affidavit when a state warrant serves as

the basis for a federal indictment, provided that federal officers had no incentive to encourage unlawful conduct on the part of state officers. *See United States v. Aiudi*, 835 F.2d 943, 945–46 (1st Cir.1987), *cert. denied*, 485 U.S. 978, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988); *see also United States of America v. One Parcel of Real Property*, 873 F.2d 7, 8 (1st Cir.1989) (extending *Aiudi* to a search conducted solely by state officers with no federal involvement).

ties; and 3) the court's refusal to allow Vargas to inspect the tape of the informant's conversation deprived him of the ability to prepare an adequate defense.

### Sufficiency of the Affidavit

■ Vargas contends that the affidavit underlying the warrant did not provide sufficient facts to articulate probable cause for issuance of the warrant. Specifically, he argues that the confidential tip, which provided the basis for the police affidavit, did not meet the reliability standard for anonymous tips set by the Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates,* the Court enunciated a "totality of the circumstances" standard to test the validity of search warrants.[4] *Id.* at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543. The Court considered the anonymous source at issue there sufficient because in the police investigation following the tip, specific events unfolded precisely as the informant had predicted. *See id.* at 245–46, 103 S.Ct. at 2335–36, 76 L.Ed.2d at 552–53. Vargas contends that since the police did not wait to see if any occurrences verified the informant's predictions, the information remained uncorroborated and thus failed to provide the basis for probable cause. We disagree. The approach that Vargas advocates would unreasonably fetter the police inquiry by requiring them to follow up solely on what the informant had stated. The police, however, use a wide variety of investigatory techniques that produce evidence that can support or refute an informant's claim. In this case, the experienced police officers observed numerous individuals visit Vargas' apartment for short periods on the evening of the informant's call. Although this activity did not directly verify the drug shipment that the informant predicted would occur the following afternoon, it indicated to the police that drug transactions were taking place at Vargas'

apartment. The police surveillance of Vargas' apartment, therefore, yielded information that corroborated the informant's tip.

Moreover, the anonymous tip led the Blackstone police to seek information concerning Vargas from the nearby Woonsocket Police Department. The Woonsocket police advised the Blackstone police that they had been investigating Vargas in connection with local drug activity, and had an outstanding warrant to arrest Vargas for the sale of controlled substances to an undercover agent. The documents provided by the Woonsocket police and attached to the affidavit explicitly confirm the informant's statement that Vargas had lived on Carrington Avenue in Woonsocket and had sold cocaine from that address. Contrary to Vargas' assertion, therefore, the Blackstone police obtained direct corroboration of the informant's information before applying for the search warrant at issue. Because the police affidavit in support of the warrant contains information which meets the *Gates* standard for probable cause, *see id.* at 230, 103 S.Ct. at 2328, 76 L.Ed.2d at 543, we uphold Vargas' conviction on this ground.

### Accuracy of the Affidavit: Phony Facts?

■ Vargas also fails to discharge his burden of showing that the court should exclude the evidence because the warrant affidavit contains a false statement which the affiant made "knowingly and intentionally, or with reckless disregard for the truth," and that the statement is material to the issuance of the warrant underlying the search. *See Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978); *accord United States v. Leon,* 468 U.S. 897, 914, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677, 693 (1984); *United States v. Parcels of Land,* 903 F.2d 36, 46 (1st Cir.1990). As the movant for a *Franks* hearing, the defendant must make

---

**4.** In *Gates,* the Court abandoned the "two-pronged test" that it had established to evaluate the informant's veracity or reliability and his basis of knowledge to determine if his tip supports the issuance of a search warrant. *See* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548

(rejecting the formula defined in *Spinelli v. United States,* 393 U.S. 410, 415–16, 89 S.Ct. 584, 588–89, 21 L.Ed.2d 637, 643 (1969) and *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964)).

a substantial preliminary showing of these facts. *Franks,* 438 U.S. at 155, 98 S.Ct. at 2676, 57 L.Ed.2d at 672. In appealing the denial of his motion for a *Franks* hearing, Vargas focuses on the fact that the informant originally identified him as "Vasquez," and claims that the failure of the affiant officer to acknowledge this disparity renders the affidavit demonstrably false. First, as the trial court pointed out, since the warrant authorized a search of premises, not persons, the mistake in name is insignificant. The warrant contained the correct address of the location to be searched, and the police surveillance of the premises supplied independent corroboration of the informant's allegations. *Cf. United States v. Bonner,* 808 F.2d 864 (1st Cir.1986) (premises described with sufficient particularity to overcome omission of street address), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987); *United States v. Turner,* 770 F.2d 1508, 1511 (9th Cir.1985) (description sufficient "to enable the executing officer to locate and identify the premises with reasonable effort" even though warrant contained incorrect street address), *cert. denied,* 475 U.S. 1026, 106 S.Ct. 1224, 89 L.Ed.2d 334 (1986).

Second, the affidavit shows that the informant told the affiant officer that the individual identified as "Vasquez" also used the alias of "Carlos Vargas." The Woonsocket police investigation reports independently corroborated the fact that Vargas used the name "Carlos" in drug transactions. The specificity of the informant's identification of Vargas, including reference to his alias and his past and current residence addresses, refutes Vargas' claim that the variance in name indicates that the informant lacked familiarity with Vargas. *Cf. Bonner,* 808 F.2d at 866 (premises described with sufficient particularity to overcome omission of street address); *Turner,* 770 F.2d at 1511 (description sufficient "to enable the executing officer to locate and identify the premises with reasonable effort" even though warrant contained incorrect street address). Assuming purely *arguendo* that the name variance rendered the affidavit underlying the warrant technically insufficient, Vargas does not demonstrate that the officer had the requisite recklessness in making the mistake, and thus fails to persuasively counter the trial court's observation that the misidentification was clearly explained as innocent error. *See Leon,* 468 U.S. at 922, 104 S.Ct. at 3420, 82 L.Ed.2d at 698 (exclusionary rule does not apply to evidence obtained through reasonable and good faith reliance on subsequently invalidated search warrants). As a result, the trial court's denial of his *Franks* motion must stand.

### *Protection of the Informant*

Vargas also argues that the district court erred by refusing to let him hear the taped conversation between the anonymous informant and the police officer. He claims that access to the tape would allow him to bolster his argument that the police intentionally misrepresented the extent of the informant's knowledge of Vargas' activities. Vargas asserts that he did not seek to compel production of the tape to learn of the informant's identity. The district court, however, presumably concluded that releasing the tapes would result in disclosure of the informant's identity, and denied Vargas' motion on the grounds that 1) the police affidavit accurately reported the contents of the tape, and 2) the identity of the informant was not essential to the defense.

In determining whether to reveal an informant's identity, a court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639, 646 (1957). *See also United States v. One 1986 Chevrolet Van,* 927 F.2d 39, 43 (1st Cir.1991) (applying *Roviaro* balancing test); *United States v. Batista–Polanco,* 927 F.2d 14, 17 (1st Cir.1991) (also applying *Roviaro*). Other factors to consider include the public interest in encouraging persons to supply the government with information concerning crimes, and preserving the safety of the informant. *See McCray v. Illinois,* 386 U.S. 300, 308–09, 87 S.Ct. 1056, 1061, 18

L.Ed.2d 62, 69 (1967). *See also One 1986 Chevrolet Van*, 927 F.2d at 41 (recognizing the importance of encouraging anonymous tips about drug transactions). The court should also examine the role of the informant in the commission of the crime. *See United States v. Martinez*, 922 F.2d 914, 921 (1st Cir.1991) (observing that the government need not reveal the identity of the informant "where the informant is a mere tipster, rather than a principal or active participant in the enterprise").

■ In this case, the informant was not involved in Vargas' activities. The district court inspected and heard the tape *in camera* and concluded that the contents of the affidavit accurately summarized the taped conversation. By refusing to allow Vargas to hear the tape, the court impliedly determined that the disclosure would either imperil the safety of the informant or interfere with police investigations. Although the district court may have taken the less restrictive route of providing a transcript of the conversation to Vargas, we defer to the trial judge's broad discretion in this sensitive area and do not find that he erred in denying Vargas access to the tape. *See United States v. Jackson*, 918 F.2d 236, 241 (1st Cir.1990) (trial judge is entitled to great deference in determining whether disclosure is necessary). Since police officers generally rely on notes that they jot down during a conversation with an informant in conducting an investigation, the only unusual aspect of this situation is that the tape existed at all. The court's assurance that the affidavit accurately reflected the contents of the tape suffices to protect Vargas' due process rights. *See United States v. Ordonez*, 737 F.2d 793, 809 (9th Cir.1984) (observing that the *Roviaro* balancing test operates to preserve due process).

### *Call Completed*

The district court did not err in concluding that the information contained in the affidavit provided probable cause under federal standards for issuance of the search warrant. Further, it soundly exercised its discretion in refusing to provide access to the taped telephone conversation between the informant and the police. Accordingly, we hold that Vargas' conviction must stand.

*Affirmed.*