NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

GILBERT H. WHITE, *Appellant*.

No. 1 CA-CR 21-0207
FILED 5-10-2022

Appeal from the Superior Court in Mohave County
No. S8015CR202000138
The Honorable Douglas Camacho, Judge *Pro Tempore*

**REMANDED FOR FURTHER PROCEEDINGS**

APPEARANCES

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Gilbert H. White, Kingman
*Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

_____

**C A M P B E L L**, Judge:

¶1 Gilbert White appeals his conviction and sentence for possession of dangerous drugs for sale. He contends an officer's affidavit did not support the judge's finding of probable cause for a search warrant because it contained material misrepresentations and omissions. Thus, he argues the trial court erred by denying his request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and by denying his motion to suppress. We agree the affidavit was insufficient regardless of the alleged veracity problems. The evidence seized during the search may nonetheless have been admissible under the good faith exception to the exclusionary rule. *See State v. Coats*, 165 Ariz. 154, 157–58 (App. 1990). Because the record is not adequately developed on that issue, we remand for further proceedings.

**BACKGROUND**

¶2 In January 2020, Detective Carlos Cortez, a member of the Department of Public Safety gang task force, received an anonymous tip that Gilbert White was selling drugs from a house in Kingman. Detective Cortez investigated and submitted an affidavit to obtain a search warrant. As grounds for probable cause, Cortez stated the following in his affidavit:

> In the first week of January 2020, Your Affiant received an anonymous tip regarding Gilbert White. The subject, who desired to remain anonymous, stated Gilbert White lives at [the specified address] and is involved in the sale of Methamphetamine. It was also stated that Gilbert delivers drugs using a bicycle. This person is not a reliable informant.
>
> Based on this information, Your Affiant conducted surveillance on the residence for several days. Your Affiant was able to identify Gilbert White conducting a driver's license check. A photograph of Gilbert White was obtained. While conducting surveillance, Your Affiant was able to observe Gilbert White inside [the specified address], using his

cell phone. On January 10, 2020[,] Your Affiant observed Gilbert White leave the [specified] property on a large size bicycle with orange rims. Your Affiant observed and followed Gilbert White as he rode his bicycle to a nearby residence and visited for approximately 15 minutes. Gilbert then rode the bicycle back to the residence [at the specified address]. Gilbert White is married to Kathleen White. An Arizona driver's license check shows the address of [the specified address] listed as her residence. Your Affiant observed Kathleen on the property. She walked out of the residence and checked the [mailbox].

On January 11, 2020, Your Affiant was conducting surveillance at the [specified] residence. While doing so, Your Affiant observed two subjects exit the [specified] residence and enter a vehicle parked in front of the residence. Your Affiant followed the vehicle and conducted a traffic stop within the City limits of Kingman. During this traffic [stop], Your Affiant contacted the driver of the vehicle. During the traffic stop, the driver was in possession of approximately 5 grams of meth. The driver did not want to disclose where he purchased the meth. The driver did advise he paid $100.00 for the meth. The driver said he was coming from his friend's house on [the street of the specified address].

Gilbert White's Criminal history shows the following:

[A list of Gilbert White's eight previous arrests on various drug charges]

From 1992 to 2014 Gilbert White has been arrested a total of 8 times on drug-related charges.

An employment check conducted by an AZDPS analyst revealed that Gilbert White shows no source of income and is currently not employed.

The affidavit also contained an allegation that White had committed the crimes of possessing dangerous drugs and drug paraphernalia, a summary of Detective Cortez's training and 17 years of experience as a police officer, and background information on common practices of drug criminals based on Cortez's training and experience. *See* A.R.S. §§ 13-3407, -3415. After reviewing the affidavit, the court issued a warrant to search the specified property for methamphetamine and other drug-trafficking evidence.

¶3        The following day, Detective Cortez and other officers executed the search warrant and found White inside a trailer on the property. After Cortez gave him a *Miranda*[1] warning, White admitted to "selling a small amount of drugs here and there" and told Cortez about some methamphetamine in the trailer. In the trailer, officers found a digital scale, a bag of cash, and a baggie containing 19 grams of methamphetamine.

¶4        The State charged White with possession of dangerous drugs for sale, a class 2 felony. A.R.S. § 13-3407(A)(2), (B)(2). White moved to suppress the evidence seized in the search, arguing Detective Cortez's affidavit did not establish probable cause because it contained intentional, material misrepresentations and omissions. *See Franks*, 438 U.S. at 155–56 (holding that defendant entitled to evidentiary hearing upon substantial preliminary showing that probable cause depends on false statements in affidavit made knowingly and intentionally, or with reckless disregard for truth). Specifically, White argued the affidavit was materially inaccurate because (1) he was not married to the woman named in the affidavit, Kathleen, and (2) Kathleen's last name was not White. He also argued the affidavit was materially incomplete because it omitted (3) the address listed on his driver's license, which was not the specified address, (4) the name of the driver Cortez pulled over, (5) the fact that the driver wasn't arrested or charged, (6) the fact that Cortez did not see White at the specified address on the day of the traffic stop, and (7) the fact that Cortez "made no effort to identify the friend" mentioned by the driver.

¶5        At the suppression hearing, Kathleen testified that she had been seeing White for 21 years but had never been married to him and did not share his last name. She also testified that he stayed at the specified address, a few weeks each month for several days. No other evidence was introduced during the hearing. After argument, the trial court concluded that the alleged misrepresentations and omissions were immaterial to the probable cause determination. The court found further that Detective Cortez's affidavit was sufficient to establish probable cause, so it denied White's request for a *Franks* hearing and his motion to suppress. A jury subsequently found White guilty as charged, and the trial court sentenced him to seven years' imprisonment. White timely appealed.[2]

---

[1]        *Miranda v. Arizona*, 384 U.S. 436 (1966).
[2]        White also petitioned for special action review after the denial of his motion to suppress, but we declined jurisdiction. *See White v. Camacho*, 1 CA-SA 21-0067 (Ariz. App. Apr. 20, 2021) (order declining special action jurisdiction).

**DISCUSSION**

**¶6**          Generally, under both the Fourth Amendment to the United States Constitution and Article 2, Section 8, of the Arizona Constitution, the police must have a warrant supported by probable cause to search and seize evidence from a person's home. *State v. Gay*, 214 Ariz. 214, 218, ¶ 8 (App. 2007). The probable cause determination must be made by a detached, disinterested magistrate based on sworn statements. *Frimmel v. Sanders*, 236 Ariz. 232, 239, ¶ 26 (App. 2014); *see also* A.R.S. §§ 13-3913, -3914. Evidence seized in violation of these constitutional principles must be suppressed, unless the good faith exception or another exception applies. *State v. Peoples*, 240 Ariz. 244, 247, ¶ 9 (2016).

**¶7**          White argues the trial court abused its discretion by denying his request for a *Franks* hearing and by denying his motion to suppress. We review the denial of a request for a *Franks* hearing de novo. *Frimmel*, 236 Ariz. at 238, ¶ 25. We review the denial of a motion to suppress for an abuse of discretion, considering only the evidence presented at the suppression hearing in the light most favorable to affirming. *See State v. Goudeau*, 239 Ariz. 421, 439, ¶ 26 (2016).

**I.     Probable Cause Supporting Issuance of the Search Warrant**

**¶8**          We agree with the trial court that the alleged veracity problems in Cortez's affidavit were immaterial to a probable cause finding because they did not significantly call into question White's connection to the specified address or the vague statements of the driver who possessed methamphetamine. But contrary to the trial court, we conclude that Cortez's affidavit was insufficient to establish probable cause regardless of the alleged misstatements and omissions.[3]

**¶9**          Probable cause exists if, "given all the circumstances set forth in the affidavit before [the magistrate], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[A]n anonymous tip is insufficient to establish probable cause," unless it is corroborated by police investigation or coupled with other evidence. *United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994) (citing *Gates*, 462 U.S. at 241–45).

---

[3]     Because we find probable cause lacking, we need not further address the court's denial of White's request for a *Franks* hearing.

¶10            To adequately corroborate an anonymous tip, an affidavit must provide more than "mere confirmation of innocent static details." *United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir. 1993) ("The fact that a suspect lives at a particular location or drives a particular car does not provide any indication of criminal activity."). "Prediction of significant future activity," on the other hand, "does provide a reasonable basis for evaluating the validity of an anonymous tip." *Id*. Corroboration of criminal activity is not required, however; even "seemingly innocent activity" may be suspicious in the context of the tip. *Gates*, 462 U.S. at 243 n.13. The level and character of detail in the tip, and in particular, the degree to which the tip indicates an intimate familiarity with details "relating not just to easily obtained facts and conditions existing at the time of the tip," are also relevant to the court's inquiry. *Id*. at 245.

¶11            Although we review the existence of probable cause de novo, *Goudeau*, 239 Ariz. at 439, ¶ 26, our task is to decide only "whether the totality of the circumstances indicates a substantial basis for the magistrate's decision," and we resolve close cases in favor of validity. *State v. Hyde*, 186 Ariz. 252, 272 (1996). We do not consider this a close case.

¶12            Here, the anonymous tip contained no predictive details to corroborate, so Detective Cortez was only able to corroborate several innocent static details. Cortez verified that White was present at the specified address and that he used a bicycle, but neither of these details suggested White was selling drugs. *Cf. Mendonsa*, 989 F.2d at 367–69 (finding probable cause lacking, in part because officer only verified that man, cars, and house matched anonymous tipper's description). White's short bicycle trip to a nearby residence might have been slightly suspicious, at least in the context of the tip, but a single observation was not enough to corroborate the allegation that White was using the bicycle to sell drugs, given the myriad of innocent explanations for his trip. *Cf. United States v. Vargas*, 931 F.2d 112, 113–14 (1st Cir. 1991) (finding anonymous tip that defendant was selling cocaine corroborated in part by observation of thirteen people, alone or in pairs, making short visits to his house during single evening).

¶13            In addition, the tip itself bore little indicia of reliability. Detective Cortez described the tipper as an anonymous person who "is not a reliable informant."[4] And the level of detail in the tip was scant at best,

---

[4]        It is unclear whether Detective Cortez meant that the tipper had proven to be unreliable or that the tipper's reliability was merely unproven.

demonstrating no intimate familiarity with White or his criminal enterprise. The facts that White stayed at the specified address and used a bicycle were things any of his neighbors might know and, taken alone, allude to nothing other than the innocent behavior of a person using a bicycle for transportation. *C.f. Gates*, 462 U.S. at 245 (noting that detailed, predictive information about defendants' travel plans likely obtained only from defendants themselves).

**¶14** Finally, the evidence stemming from Detective Cortez's independent investigation is not enough to overcome the lack of corroboration and the reliability problems. The fact that White was supposedly married to a woman who lived at the residence provided no indication of criminal activity. And the fact that a single visitor was found in possession of methamphetamine after leaving the house is not probative because the affidavit did not connect White to the drugs, did not indicate White was at the house when the visit took place, and did not say how long the visit lasted. *Cf. State v. Keitz*, 1 CA-CR 08-0807, 2010 WL 286776, at *2–3, ¶¶ 8–9, 13 (Ariz. App. Jan. 26, 2010) (mem. decision) (finding probable cause to search defendant's house where car's occupants admitted buying methamphetamine from defendant, during traffic stop, after police saw defendant interreact with them for a few minutes at house).

**¶15** In sum, the information contained in the affidavit did not provide the court with a substantial basis to find probable cause, and the search warrant was therefore invalid.

## II. Good Faith Exception

**¶16** Although we conclude the search warrant was invalid, we are bound to uphold the trial court's ruling if the result was correct for any legally sound reason. *See State v. Perez*, 141 Ariz. 459, 464 (1984). Mindful of this obligation, we consider the applicability of the good faith exception to the exclusionary rule. Under the good faith exception, illegally obtained evidence need not be suppressed "when the police act with an objectively reasonable good-faith belief that their conduct is lawful." *State v. Weakland*, 246 Ariz. 67, 69–70, ¶¶ 6–7 (2019) (quotation omitted) (explaining that exclusionary rule is intended "solely" to deter future violations and that exclusion cannot be justified by deterrence rationale when police act reasonably and in good-faith). "[T]he good faith exception is precluded," as

Either way, the tipper's reliability does not weigh in favor of probable cause.

relevant here, "when a warrant is based on an affidavit that lacks any indicia of probable cause, thus rendering 'official belief in its existence entirely unreasonable'" and "when a warrant is 'so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.'" *State v. Crowley*, 202 Ariz. 80, 92, ¶ 35 (App. 2002) (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). If the good faith exception to the exclusionary rule is applicable here, then the trial court did not err in denying White's motion to suppress. *See generally Coats*, 165 Ariz. at 157–58 (discussing good faith exception under A.R.S. § 13-3925, Ariz. Const. art. 2, § 8, and U.S. Const. amends. IV, V).

**¶17** Because the court denied the request for a *Franks* hearing and summarily found the warrant was supported by probable cause, the good faith exception was not raised in the trial court. The parties have not had an opportunity to address its application in these circumstances. For that reason, we remand for further proceedings on whether the evidence admitted at trial was admissible under the good faith exception. Depending on whether the State meets its burden to prove the good faith exception applies, the trial court must either reaffirm or vacate White's conviction and sentence. *See Crowley*, 202 Ariz. at 91, ¶ 32.

## CONCLUSION

**¶18** We remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:   AA